## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

_____

**Xerox Corporation,**

      Plaintiff and Counterclaim-
      Defendant.

          v.

**Conduit Global, Inc.,**

      Defendant and Counter-
      claim-Plaintiff

_____

**DECISION and ORDER**

21-cv-6467-EAW-MJP

## APPEARANCES

**For Plaintiff and
Counterclaim-Defendant:**

**Carolyn G. Nussbaum, Esq.**
**Eric M. Ferrante, Esq.**
**Sarah L. Tufano, Esq.**
Nixon Peabody LLP
1300 Clinton Sq, Ste 1244
Rochester, NY 14604

**For Defendant and
Counterclaim-Plaintiff:**

**Peter J. Behmke, Esq.**
**Maxwell D. Herman, Esq.**
**Scott S. Balber, Esq.**
Herbert  Smith  Freehills  New
York LLP
450 Lexington Ave, 14th Flr
New York, NY 10017

[Remainder of this page intentionally blank.]

## INTRODUCTION

**Pedersen, M.J.** The Federal Rules of Civil Procedure make losing a motion to compel costly. They likewise reward successful protective order motions.

Here, Plaintiff Xerox brought a successful motion for a protective order. Xerox likewise prevailed on the bulk of its opposition to Defendant Conduit Gobal's motion to compel. On the other side of the coin, however, Conduit succeeded on some of its motion to compel. The question for the Court is whether to award attorneys' fees and costs and to whom.

## BACKGROUND

This case involves a contract dispute between Xerox and its former service provider, Conduit. Under an Outsourcing Agreement, Xerox asked Conduit to provide telephone services for Xerox customer support. The Agreement required Conduit to provide "customer service call center support and other extensive IT-related services" and to do so in a secure manner. (Compl. ¶¶ 13–14, ECF No. 1, July 2, 2021.) Conduit provided a platform to support Xerox's customer relationships in the United States, including customer service, orders, and sales. (*Id.* ¶ 1.)

Recognizing the critical role that these functions played in Xerox's operations, the Agreement required Conduit to "maintain levels of physical and data security protection in accordance with industry standards, current legal obligations and Xerox policies as outlined in Schedule 15

(Xerox Policies) of this Agreement." (Herman Decl. Ex. 1 (the "Agreement") § 20.1, ECF No. 60-2, Feb. 28, 2023.) These security protections could include, for example, multi-factor authentication, which Xerox alleges Conduit failed to implement. (Compl. ¶ 22, ECF No. 1 (alleging that the cause of the breach to Conduit's networks included "Conduit's failure to use multi-factor authentication and its use of insufficient end-point security and intrusion detection").)

### *Conduit suffers a ransomware attack that allegedly harms Xerox, so Xerox sues.*

Roughly three-and-a-half years into the Agreement, Conduit suffered a ransomware attack.[1] The attack appears to have been widespread: Xerox indicates that the attackers "cripple[d] all of Conduit's data centers globally." (*Id.* ¶ 23.) Xerox notes that "Xerox agents could not log into Conduit's system to take customer calls and Xerox customers and partners could not contact Xerox by telephone, including those in need of repairs[.]" (*Id.*) In sum, the attack "crippled" Xerox's ability to communicate with its partners and customers for "weeks." (¶¶ 1, 12, 20, ECF No. 1.)

Xerox terminated the Agreement for cause based on Conduit's "material breaches" of the Agreement, citing Conduit's "failure to meet

---

[1] For background, *see* Federal Bureau of Investigation, *Ransomware*, https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-scams-and-crimes/ransomware (last visited July 25, 2024).

contractually prescribed service levels." (*Id.* ¶¶ 1, 3, 32.) Conduit rejected the notice, demanding the termination fee required under the Agreement for termination without cause. (*Id.* ¶¶ 34, 42.) So, Xerox sued, seeking a declaratory judgment that terminating Conduit was valid, that Xerox was not obligated to pay the termination fee, and that Xerox should be awarded damages for Conduit's breach. (*Id.* ¶¶ 53 & 59.)

### *After a saga of discovery disputes, the parties bring dueling discovery motions.*

After the parties completed their pleadings, the Hon. Elizabeth A. Wolford, Chief Judge, referred this case to the undersigned. (Text Order, ECF No. 10, July 29, 2021.) With this case came a string of discovery disputes. While the Court managed to informally resolve some of the parties' disputes, Conduit eventually moved to compel. (ECF No. 60, Feb. 28, 2023.) Xerox opposed and cross-moved for a protective order. (ECF No. 62, Mar. 21, 2023.) Conduit's motion to compel comprised two categories.

Conduit *first* demanded Xerox policy documents, including "all" documents related to Xerox's data security "policies" and "any analysis or assessment" of the same. (Herman Decl. in Supp. of Mot. to Compel Ex. 4 at 9 ¶¶ 1 & 2 (Conduit's Second Set of Document Requests, Request Nos. 1 and 2), ECF No. 60-5, Feb. 28, 2023.) The parties refer to these

4

as the "Policy Requests." The Policy Requests ask Xerox to produce documents explicitly referenced in the Agreement and any "analysis or assessment" of those policies:

> 1. All Documents Concerning [Xerox's] policies rules, requirements and procedures relating to data security, including but not limited to [Xerox's] policies, rules, requirements and procedures referenced in Section 20.1 of the Outsourcing Agreement.

> 2. All Documents Concerning any analysis or assessment of [Xerox's] policies, rules, requirements, and procedures relating to data security, including but not limited to [Xerox's] policies, rules, requirements and procedures referenced in Section 20.1 of the Outsourcing Agreement.

(*Id.*) Conduit additionally maintained that, under these requests, it should have access to assessments and policies regarding two other Xerox vendors: Bell Canada and Genesys.[2] Ultimately, the Court disagreed.

---

[2] About this, Conduit stated in its motion to compel:

Based on discovery to date, Conduit understands there are at least two Xerox business partners that provided the same or similar information and technology services to Xerox during the relevant period: Bell Canada (which provided telephony services to Xerox in Canada) and Genesys (to which Xerox outsourced telephony services after terminating the Agreement with Conduit). There are presumably other business partners that provided information services to Xerox, or that had similar Xerox data on its systems, that were required to comply with the same policies as Conduit. Because Xerox was required under its own policies to review, assess, and audit all security controls applicable to those services, processes, and information, Conduit expects there is a trove of relevant information concerning Xerox's

The *second* category of Conduit's motion to compel deals with a separate ransomware attack Xerox suffered (the "Xerox Incident Request"). Conduit's Xerox Incident Request demanded documents and information about a cyber-attack Xerox had suffered: "All Documents and Communications Concerning any malware or cyberattacks on [Xerox], including but not limited to the cyberattack suffered by [Xerox] in or about June 2020[.]" (*Id.* Ex. 2 at 13 ¶ 21 (Conduit's First Set of Document Requests, Request No. 21), ECF No. 60-3, Feb. 28, 2024.) The Court denied Conduit's motion to compel concerning this Request, granting instead Xerox's cross-motion for a protective order concerning the Xerox Incident.

In cross-moving for a protective order, Xerox argued that the Xerox Incident was irrelevant to Conduit's claims and defenses. (Mem. of Law in Opp'n to Mot. to Compel and in Supp. of Cross-Mot. at 19–22, ECF No. 62-6, Mar. 21, 2023.) Besides contending that the Xerox Incident was "beyond the proper scope of discovery," Xerox argued that Conduit had "no purpose" for these requests other than to "frustrate and annoy Xerox." (*Id.* at 2, 23–24.)

---

usage, course of dealing, and understanding of those policies as applied to businesses and systems like those of Conduit.

(Mem. of Law in Supp. of Mot. to Compel at 10, ECF No. 60-15.)

***The Court decides Conduit's motion to compel and Xerox's motion for a protective order.***

The Court granted Conduit's motion to compel in part but granted Xerox's cross-motion for a protective order in full. (Decision & Order ("D&O"), ECF No. 73, Sept. 7, 2023.[3]) The Court granted Conduit's motion to compel only concerning part of its "Policy Requests." The Court limited what it would compel by requiring that the documents Xerox had to produce could only relate to "Xerox's claims that Conduit failed to comply with Xerox policies":

> After considering extensive arguments of both parties, the Court directs Xerox to respond to Request 1 and to produce all relevant documents concerning Xerox's policies, rules, requirements and procedures relating to data security, including but not limited to Xerox's policies, rules, requirements and procedures referenced in Section 20.1 of the Outsourcing Agreement so long as it is related to Xerox's claims that Conduit failed to comply with Xerox policies. The Court finds that this information will aid[] Conduit in understanding its alleged breaches of the Agreement and possibly lead to admissible evidence.

(*Id.* at 6.) Since then, Xerox has maintained that it already turned over all documents the Court required it to compel.

***After the Court grants Conduit's motion in part, Conduit moves for attorneys' fees.***

The Court allowed the parties to submit briefing on whether to award costs, and if so, to what extent. Conduit moved for $74,143.60 in

---

[3] This decision and order is dated September 6, 2023, but was docketed on September 7.

attorneys' fees under Federal Rule of Civil Procedure 37. (Behmke Decl. in Supp. of Fee Mot. ¶ 25, ECF No. 74-1, Sept. 20, 2023.) Conduit based its request on Fed. R. Civ. P. 37(a)(5)(A). (Mem. of Law in Supp. of Fee Mot. at 4, ECF No. 74-4.) Xerox cross-moved for $51,951.20 in reasonable expenses, including attorneys' fees

> pursuant to Federal Rule of Civil Procedure 37(a)(5)(C) and/or Rule 37(a)(5)(B), and in making a Cross-Motion for a Protective Order (Dkt. No. 62), pursuant to Federal Rule of Civil Procedure 26(c)(3) and Rule 37(a)(5)(A), on the grounds that the Court's Decision and Order (Dkt. No. 73) substantially denied Conduit's Motion to Compel, granting it only as to documents Xerox had already produced, and granted Xerox's Cross-Motion for a Protective Order in its entirety.

(Nussbaum Decl. in Opp'n to Fee Mot. and in Supp. of Fee Cross-Mot. ("Nussbaum Cross-Mot. Decl.") ¶¶ 2 & 36, ECF No. 75-1, Oct. 4, 2023.)

Conduit opposed Xerox's cross-motion for two reasons. *First*, Conduit argued that Xerox was procedurally barred from receiving a fee award for "fail[ure] to meet and confer with Conduit prior to filing its motion for a protective order to limit the scope of depositions, a prerequisite for any fee award." (Opp'n to Fee Cross-Mot. and Reply in Supp. of Fee Mot. at 1, ECF No. 78, Oct. 11, 2023.) *Second*, Conduit claimed that its "motion to compel and opposition to the protective order were well supported by legal authority" and thus substantially justified, precluding fee shifting under Rule 37(a)(5). (*Id.* at 1–2.)

***Xerox responds to Conduit's application for attorneys' fees by cross-moving.***

Xerox had two responses. *First*, Xerox claimed it had attempted to meet and confer with Conduit on the subject matter of the protective order and that further attempts would have been futile. (Nussbaum Reply Decl. in Supp. of Fee Cross-Mot. ¶¶ 3–8, ECF No. 79, Oct. 18, 2023.) *Second*, Xerox argued that because Conduit's motion to compel was denied essentially in full, "[t]he only fair apportionment is to deny *any* fees to Conduit." (Reply Mem. of Law in Supp. of Fee Cross-Mot. at 3, ECF No. 79-12, Oct. 18, 2024 (emphasis in original).) Similarly, Xerox asserted that since "Xerox's" motion for a protective order "was completely successful[,] [t]he Court should grant Xerox's Fee Cross-Motion in its entirety." (*Id.* (alterations added).)

***The Court holds oral argument on the fees applications.***

The Court held oral argument on the dueling fees motions on December 13, 2023. (Minute Entry, ECF No. 82.) Although the Court permitted the parties time to submit limited post-argument briefing, they declined to do so. (Text Order, ECF No. 83, Dec. 14, 2023; Xerox Letter, ECF No. 84, Dec. 19, 2023.)

## LEGAL STANDARDS

For the reasons discussed here and below, the Court analyzes Xerox's motion for a protective order under Fed. R. Civ. P. 37(a)(5)(A) and Conduit's partially successful motion to compel under Fed. R. Civ.

P. 37(a)(5)(C). The Court begins with the standard applicable to the motion to compel.

### Rule 37(a)(5)(C) gives the Court broad discretion to apportion fees for Conduit's motion to compel.

When the court grants in part and denies in part a Rule 37 motion to compel, under the plain language of that rule, it "may issue any protective order authorized under Rule 26(c) and may, after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5)(C). Courts have "broad discretion" to award such fees. *Uddin v. O'Brien Rest. Holding Co., LLC*, No. 16-CV-2098 (RJS), 2017 WL 11674895, at *3 (S.D.N.Y. Aug. 23, 2017) (quoting *Smith v. Conway Org., Inc.*, 154 F.R.D. 73, 78 (S.D.N.Y. 1994)); *see also Corporation of Lloyd's v. Lloyd's U.S.*, 831 F.2d 33, 36 (2d Cir. 1987). As discussed below in denying Conduit's motion for fees with leave to renew, Rule 37(a)(5)(C) may include the exceptions the Court discusses for Rule 37(a)(5)(A).

### Rule 37 mandates that the Court award attorneys' fees based on Xerox's successful Rule 26(c) motion unless an exception applies.

Fed. R. Civ. P. 37(a)(5)(A) requires the party opposing a motion for a protective order to "pay the movant's reasonable expenses incurred in making the motion, including attorney's fees" if the Court grants the

motion.[4] This rule has three exceptions. *See Hassoun v. Searls*, 524 F. Supp. 3d 101, 109 (W.D.N.Y. 2021) ("It is widely accepted that an award of expenses under Rule 37(a)(5)(A) is mandatory unless one of the three exceptions applies." (cleaned up) (quoting *Wager v. G4S Secure Integration, LLC*, No. 1:19-CV-03547 MKV KNF, 2021 WL 293076, at *4 (S.D.N.Y. Jan. 28, 2021))). Under these exceptions, the Court must not award fees where

---

[4] Some brush-clearing may be helpful about the governing law for this decision. *First*, Fed. R. Civ. P. 26(c)(3) directs the Court to look to Fed. R. Civ. P. 37(a)(5) for awarding fees on a successful motion for a protective order.

*Second*, the rule also requires that the Court provide the losing party the opportunity to be heard. *See Hassoun v. Searls*, 524 F. Supp. 3d 101, 109 (W.D.N.Y. 2021) ("Rule 37(a)(5)(A) mandates an award of fees in connection with a successful motion to compel, unless 'after giving an opportunity to be heard' the Court determines that" one of three exceptions applies (quoting Fed. R. Civ. P. 37(a)(5)(A))). Here, the Court provided as much by hearing from the parties on papers and at oral argument. *See, e.g., Ost-W.-Handel Bruno Bischoff GmbH v. M/V Pride of Donegal*, No. M8-85, 1997 WL 231126, at *1 (S.D.N.Y. May 7, 1997) ("The parties have been afforded an opportunity to be heard, as I decide this motion having heard the parties at oral argument and having considered their letter briefs on the issue of attorneys' fees which were submitted at my request.").

*Third*, the Court finds that Fed. R. Civ. P. 37(a)(5)(A) applies to Xerox's fully successful motion for a protective order. Fed. R. Civ. P. 37(a)(5)(C) gives the Court some pause because it anticipates that in granting in part and denying in part a motion to compel, the Court may also award a protective order. It states: "If the motion is granted in part and denied in part, the court may issue any protective order authorized under Rule 26(c)[.]" Fed. R. Civ. P. 37(a)(5)(C). But the plain language of Rule 37(a)(5)(A) seems far more applicable because it contemplates situations like this one where the Court granted a motion for a protective order in full. Moreover, Rule 37(a)(5)(C) seems designed for situations in which the party opposing the motion to compel does not move for a protective order. That is not the case here. Under Rule 37(a)(5)(C), the Court may still grant a protective order, even if the party opposing the motion to compel did not move for one.

- "(i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action";

- "(ii) the opposing party's nondisclosure, response, or objection was substantially justified"; or

- "(iii) other circumstances make an award of expenses unjust."

*Id.* (reformatted as a list) (quoting Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii)). "The burden is 'on the disobedient party to avoid expenses by showing that his failure is justified or that special circumstances make an award of expenses unjust.'" *White v. Larusch*, 532 F. Supp. 3d 122, 124 (W.D.N.Y. 2021) (quoting *Novak v. Wolpoff & Abramson LLP*, 536 F.3d 175, 178 (2d Cir. 2008)).

### If the Court awards fees, the lodestar analysis applies.

"After concluding a party is entitled to attorneys' fees, a court determines the 'presumptively reasonable fee' to which that party is entitled by multiplying a reasonable hourly rate for each attorney by the reasonable number of hours he or she expended on the case." *Capitol Recs., LLC v. ReDigi Inc.*, No. 1:12-CV-95 (RJS), 2022 WL 3348385, at *1 (S.D.N.Y. Aug. 12, 2022) (Sullivan, J., sitting by designation) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 189–90 (2d Cir. 2008)). "This procedure is referred to as the 'lodestar method.'" *Id.* (quoting *McDonald ex rel Prendergast v.*

*Pension Plan of the NYSA-ILA Pension Tr. Fund*, 450 F.3d 91, 96 (2d Cir. 2006)).

Additionally, the Second Circuit has directed district courts to consider factors outside the lodestar.[5] *See Arbor Hill*, 522 F.3d at 190 (noting that district courts should "bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate"). Courts are thus entrusted with discretion to calculate a reasonable fee

---

[5] In *Arbor Hill*, the Second Circuit listed seven non-exhaustive factors:

(1) the complexity and difficulty of the case,

(2) the available expertise and capacity of the client's other counsel (if any),

(3) the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics),

(4) the timing demands of the case,

(5) whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself,

(6) whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and

(7) other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Id.* at 184 (reformatted as a list).

given their "familiarity with the quality of the representation and the extent of the litigation[.]" *Cush-Crawford v. Adchem Corp.*, 94 F. Supp. 2d 294, 301 (E.D.N.Y. 2000), *aff'd*, 271 F.3d 352 (2d Cir. 2001) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 876 (2d Cir. 1998)).

But the "starting point" is always calculating the lodestar. *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) ("While the lodestar is not always conclusive, its presumptive reasonability means that, absent extraordinary circumstances, failing to calculate it as a starting point is legal error."). It is the starting point because "the Supreme Court's directive that fee award calculations be 'objective and reviewable,' implies [that] the district court should at least provide the number of hours and hourly rate it used to produce the lodestar figure." *Id.* at 166–67 (quoting *Perdue v. Kenny A. ex rel. Winn.*, 559 U.S. 542, 555 (2010)).

### XEROX IS ENTITLED TO ATTORNEYS' FEES

Xerox successfully opposed the bulk of Conduit's motion to compel. And the Court granted Xerox's motion for a protective order in full. Under these circumstances, and for the reasons the Court discusses, the Court will award Xerox some of its requested attorneys' fees as an exercise of its discretion under Fed. R. Civ. P. 37(a)(5)(A) & (C). The Court addresses Conduit's application for fees separately.

### *Conduit has not shown it is entitled to an exception based on the Federal Rules' meet-and-confer requirement.*

There are two possible meet-and-confer provisions involved here. *First*, under Fed. R. Civ. P. 26(c)(1), the party moving for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." *Second*, under Fed. R. Civ. P. 37(a)(5)(A)(i), which applies to awards of fees per Fed. R. Civ. P. 26(c)(3), the Court "must not order" a fee award if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." The Court begins with the first of these.

### **Conduit forfeited any argument based on Xerox's failure to include a certification in opposing Xerox's cross-motion under Rule 26(c)(1).**

Remember that Conduit moved to compel all Xerox Incident documents, namely, "[a]ll Documents and Communications concerning any malware or cyberattacks on [Xerox]," including the ransomware attack Xerox suffered "in or about June 2020." (Nussbaum Cross-Mot. Decl. ¶ 20, Oct. 4, 2023, ECF No. 75-1.) Xerox cross-moved for a protective order. (ECF No. 62.) The Court granted Xerox's motion. (D&O at 9–10, ECF No. 73.) Xerox's cross-motion did not mention its attempts to meet-and-confer with Conduit nor did it include a certification or affidavit about the same. But neither did Conduit raise the issue in its opposition to Xerox's cross-motion. Or at all, for that matter.

Because Conduit did not raise Xerox's failure to include a certification in opposing Xerox's cross-motion under Rule 26(c)(1), Conduit may not do so now. The Court finds that Conduit forfeited this argument. *See Brown v. City of New York*, 862 F.3d 182, 187 (2d Cir. 2017) ("The discretion trial courts may exercise on matters of procedure extends to a decision on whether an argument has been waived."); *see also Document Sec. Sys., Inc. v. Ronaldi*, No. 20-CV-6265-EAW-MJP, 2022 WL 2207185, at *11 (W.D.N.Y. June 21, 2022) ("Given the danger of … gamesmanship, courts may deem arguments forfeited especially where, as here, the party does not explain its delay." (citing Fed. R. Civ. P. 1)).

But Conduit has not forfeited any argument under Fed. R. Civ. P. 37(a)(5)(A)(i). That rule does not come into play until the winning party makes a fee application. It requires the losing party to pay attorneys' fees and expenses unless "the movant filed the motion before attempting in good faith to obtain the [documents] without court action." Fed. R. Civ. P. 37(a)(5)(A)(i).

Here, the Court finds that the parties attempted to resolve their underlying dispute about Conduit's requests without court action. They met the meet-and-confer requirement. Even if they had not, the Court finds that additional meet-and-confers would have been futile.

**The meet-and-confer requirement of Fed. R. Civ. P. 37(a)(5)(A)(i) does not bar Xerox from fees and costs.**

"The 'meet[-]and[-]confer' requirement embodies a policy of encouraging voluntary resolution of pretrial disputes, in the interest of judicial and client economy and effective processing of cases." *Wang v. Delphin-Rittmon*, No. 3:17-CV-00586 (JAM), 2023 WL 7384389, at *4 (D. Conn. Nov. 8, 2023) (quoting *Avent v. Solfaro*, 210 F.R.D. 91, 95 (S.D.N.Y. 2002)). "[D]istrict courts maintain discretion to waive the meet-and-confer requirement." *Elhannon LLC v. F.A. Bartlett Tree Expert Co.*, No. 2:14-CV-262, 2017 WL 1382024, at *9 (D. Vt. Apr. 18, 2017) ("Courts have excused a failure to meet and confer where: (1) under the circumstances, the parties do not have time to attempt to reach an agreement; or (2) an attempt to compromise would have been clearly futile." (quoting *Care Envtl. Corp. v. M2 Techs. Inc.*, No. CV–05–1600 (CPS), 2006 WL 1517742, at *3 (E.D.N.Y. May 30, 2006))); *accord Woodward v. Holtzman*, No. 16-cv-1023A(F), 2018 WL 5112406, at *2 (W.D.N.Y. Oct. 18, 2018) (holding that "further efforts by Plaintiff to resolve the dispute without motion practice would be futile" (citing *United States v. Acquest Transit LLC*, 319 F.R.D. 83, 89 (W.D.N.Y. 2017))). "In particular, courts look to the history of negotiations between the parties to determine whether further meet-and-confer efforts would be unfruitful." *Elhannon LLC*, 2017 WL 1382024, at *9 (citing *Prescient Partners,*

*L.P. v. Fieldcrest Cannon, Inc.*, No. 96 CIV. 7590(DAB)JCF, 1998 WL 67672, at *3 (S.D.N.Y. Feb. 18, 1998)).

Additional history of the parties' negotiations—beyond what the Court discussed in recounting the procedural history of this case—demonstrates that the parties met and conferred in good faith. This history likewise shows that further meet-and-confer efforts would have been pointless.

Despite eighteen months of back-and-forth, the parties did not resolve the issues that Xerox later identified in its cross-motion for a protective order. True, Xerox's eventual motion for a protective order dealt with depositions. But that does not alter the underlying basis of the dispute: Conduit's improper requests that necessitated Xerox's forward-looking cross-motion for a protective order.

In a string of letters,[6] the parties identified the disputes that this Court ultimately resolved in its decision and order granting Xerox's motion for a protective order. Eventually, the Court directed the parties to

---

[6] For ease of reading, the Court has placed this citation here: (Conduit Letter, ECF No. 42, Sept. 22, 2022 (noting dispute regarding the Policy Requests); Xerox Letter, ECF No. 43, Sept. 30, 2022 (noting dispute regarding the Policy Requests and Xerox Incident); Conduit Letter, ECF No. 44, Oct. 7, 2022 (noting that the parties had engaged in "multiple meet and confer attempts"); Conduit Letter, ECF No. 45, Nov. 7, 2022 ("The parties also currently are meeting and conferring with respect to discovery disputes, which disputes may result in the production of documents or the need for Court intervention."); Conduit Letter, ECF No. 50, Feb. 2, 2023 (requesting conference with the undersigned).)

meet-and-confer again. (Text Order, ECF No. 55, Feb. 13, 2023.) That
text order likewise directed the parties to submit a status report. (*Id.*)

Two weeks later, the parties' status report came back. Conduit
and Xerox stated that

> the Parties exchanged correspondence and, on Feb-
> ruary 16, 2023, met and conferred in a good faith
> effort to resolve the pending discovery dispute con-
> cerning Request Number 21 in Conduit's First Set
> of Document Requests, dated October 5, 2021, and
> Request Numbers 1 and 2 in Conduit's Second Set
> of Document Requests, dated July 19, 2022.

(ECF No. 59, Feb. 21, 2023.) Conduit told the Court that "[d]espite these
efforts, the Parties remain at an impasse." (*Id.*) The Court draws several
conclusions from this background.

*First*, Xerox and Conduit met and conferred. *See Big Apple Pyro-
technics v. Sparktacular Inc.*, No. 05 CIV. 9994 KMW/DFE, 2006 WL
587331, at *1 (S.D.N.Y. Mar. 8, 2006) ("'Confer' means to meet, in person
or by telephone, and make a genuine effort to resolve the dispute by de-
termining, without regard to technical interpretation of the language of
a request, (a) what the requesting party is actually seeking, (b) what the
discovering party is reasonably capable of producing that is responsive
to the request, and (c) what specific genuine issues, if any, cannot be
resolved without judicial intervention."). Conduit reads the meet-and-
confer requirement to require Xerox to discuss the dispute exhaustively.
The Court disagrees.

Here, the parties met and conferred about the requests Conduit made that caused their dispute. They concluded that compromise was unattainable. So, they asked the Court for intervention. When it came time for the motion to compel, Xerox understandably asked for relief for depositions as the next step of discovery. On this record, the Court concludes that Xerox met its meet-and-confer requirement. The meet-and-confer requirement does not demand that parties discuss every possible avenue for relief, only their underlying dispute and what is involved in it.

*Second*, additional meet-and-confers would have been "unfruitful." *Elhannon, LLC*, 2017 WL 1382024, at *9 (citation omitted). Further meet and confers about depositions or the disputes more broadly would be pointless once the parties had agreed that they could not reach compromise about the request at issue. *See Acquest Transit LLC*, 319 F.R.D. at 89–90 (holding that compliance with meet-and-confer requirement was futile where the parties had "a history of prior attempts at resolution without resort to motion practice"). Alerting Conduit to the possibility that Xerox would cross-move for a protective order concerning depositions would have made no difference, other than to expose Xerox's litigation strategy. In any event, Conduit—as a sophisticated litigant—should have understood a cross-motion about depositions was possible.

*Third*, if the months of discovery disputes before were not enough time to resolve the parties' disputes, the 14 days Xerox had before its opposition to Conduit's motion to compel and cross-motion was not enough time for additional negotiation. "Courts have excused a failure to meet and confer where" the parties lack "time to attempt to reach an agreement." *Elhannon, LLC*, 2017 WL 1382024, at *9 (quoting *Care Envtl. Corp.*, 2006 WL 1517742, at *3). Here, with depositions approaching, "and the need for" Xerox "to prepare in advance," Conduit and Xerox "ran out of time to complete a meet-and-confer." *In re Rock 'N Play Sleeper Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. 1:19-MD-2903, 2021 WL 11962970, at *2 (W.D.N.Y. Aug. 4, 2021). For these reasons, the Court finds that Xerox is not barred from attorneys' fees for its successful motion for a protective order based on the meet-and-confer requirement.

### Conduit's requests insofar as the Court declined to grant them—and thus Conduit's opposition to Xerox's motion for a protective order—were not substantially justified.

Under Fed. R. Civ. P. 37(a)(5), the losing party on a motion for a protective order can avoid paying attorneys' fees if "the opposing party's nondisclosure, response, or objection was substantially justified[.]" Fed. R. Civ. P. 37(a)(5)(A)(ii). Substantial justification exists "where there is justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the

disclosure request, or if there exists a genuine dispute concerning compliance." *Jackson v. Nassau County*, 602 F. Supp. 3d 352, 355 (E.D.N.Y. 2022) (quoting *Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 280 F.R.D. 147, 159 (S.D.N.Y. 2012)); *Hinterberger v. Cath. Health Sys., Inc.*, 284 F.R.D. 94, 106 (W.D.N.Y. 2012) ("The Supreme Court has defined 'substantially justified' to mean 'justified in the substance or the main'—that is, justified to a degree that could satisfy a reasonable person." (quoting *United States v. $19,047.00 in U.S. Currency*, 95 F.3d 248, 251 (2d Cir. 1996))).

This standard requires only an inquiry as to 'an objective test of reasonableness' and not as to whether the party or counsel acted 'in good faith.'" *Jackson*, 602 F. Supp. 3d at 355 (quoting *Cardwell v. Davis Polk & Wardwell LLP*, No. 1:19-CV-10256-GHW, 2021 WL 2650371, at *2 (S.D.N.Y. June 28, 2021)). "The burden of persuasion as to whether an exception to mandatory expenses applies is on the party opposing the motion." *Id.*; *see also Novak* 536 F.3d at 178 (discussing Fed. R. Civ. P. 37).

This standard does not change when the Court denies a motion to compel.[7] *See Novick v. AXA Network, LLC*, No. 07 CIV. 7767 AKH KNF,

---

[7] Fed. R. Civ. P. 37(a)(5)(B) states: "But the court must not order [ ] payment" for a motion to compel loss "if the motion was substantially justified

2013 WL 7085799, at *2 (S.D.N.Y. Nov. 6, 2013) (citation omitted) ("A motion is substantially justified if it is justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person." (cleaned up) (quoting *Gomez-Beleno v. Holder*, 644 F.3d 139, 145 (2d Cir. 2011))). "In other words, to avoid mandatory attorney's fees … the movant must show that his motion had a 'reasonable basis both in law and fact.'" *Id.* (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)).

Unlike the cases Conduit discusses where courts acknowledged mitigating circumstances, the Court here declined to compel Xerox to produce entire categories of information that Conduit demanded. Yet Conduit makes much of the substantial justification standard. True, that standard is not the same as the standard for granting a Rule 37 or 26 motion in the first instance. *See id.* ("The fact that the plaintiff's motion to compel an accounting was denied and the Court found the

---

or other circumstances make an award of expenses unjust." Notably absent is any reference to the meet-and-confer requirement.

As discussed, however, the Court is deciding Xerox's motion for fees based on the Court's partial denial of Conduit's motion to compel under Fed. R. Civ. P. 37(a)(5)(C). *See supra* n.4. As discussed *infra* n.13, the Court is undertaking a substantial justification analysis based on case law but notes its uncertainty about the necessity of doing so based on the plain language of Rule 37(a)(5)(C). *But see Wager*, 2021 WL 293076, at *3 ("Rule 27(a)(5)(C) effectively incorporates the substantive standards of Rule 37(a)(5)(A) … Therefore, in determining whether to award expenses under Rule 37(a)(5)(C), courts must consider the three exceptions listed under Rule 37(a)(5)(A)." (citations and quotation omitted)).

plaintiff's evidence was insufficient to satisfy his burden of showing that granting the motion was warranted does not, by itself, establish that the plaintiff's motion was not substantially justified."). But this case is different. The Court concludes that Conduit was unjustified in its requests (insofar as the Court declined to grant them) and in its opposition to Xerox's motion for a protective order.

As for the requests, the Court rejected them as irrelevant. And the Court granted Xerox's motion for a protective order in full. This pays tribute to what Conduit should have known from the outset: its requests were not reasonable. (D&O at 7–8, ECF No. 73 (finding that Conduit's "request for documents concerning other businesses" amounted to "a fishing expedition" and finding Conduit's request for information "related to Xerox's ransomware attack … not relevant").) The Court thus concludes Conduit fails to show substantial justification in any respect.

### Because the Agreement is not ambiguous, most of Conduit's requests are irrelevant.

The Court next explains why Conduit's requests, except for what the Court compelled Xerox to produce, are irrelevant. Conduit's requests rested on the parties' Agreement being ambiguous concerning what the Agreement required of Conduit. But the Agreement was unambiguous about the yardstick against which Conduit's performance would be measured. To comply with the Agreement, Conduit needed to adhere to

industry standards, current legal obligations, and Xerox policies. (Agreement § 20.1, ECF No. 60-2.[8]) By its plain terms, performance under the Agreement did not hinge on Xerox's contracts with third parties or internal communications about those contracts. (D&O at 7, ECF No. 73 ("Conduit has not demonstrated that communications with or about the third-party business partners concerning their own internal policies would have any bearing on whether Conduit complied with Xerox's policies.").)

In moving to compel, however, Conduit argued that "the Xerox policies are replete with ambiguous, conceptual requirements, such as that 'adequate' controls be employed for sensitive or vulnerable systems, that risks be mitigated to an 'acceptable' level, and that the costs for mitigation be commensurate with the value or function of the system." (Mem. of Law in Supp. of Mot. to Compel at 1, ECF No. 60-15.) Conduit

---

[8] It is worth recalling that, to the extent that Xerox incorporated its policies by reference in the Agreement, the Court ordered Xerox to produce such policies and certain documents concerning them. (D&O at 6–7, ECF No. 73 ("After considering extensive arguments of both parties, the Court directs Xerox to respond to Request 1 and to produce all relevant documents concerning Xerox's policies, rules, requirements and procedures relating to data security, including but not limited to Xerox's policies, rules, requirements and procedures referenced in Section 20.1 of the Outsourcing Agreement so long as it is related to Xerox's claims that Conduit failed to comply with Xerox policies.").) This is different from using extrinsic evidence from Xerox to show, say, relevant industry standards.

thus asserts that the Xerox policies made a part of the Agreement are ambiguous.

Ambiguity in law occurs if words are "capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire" document. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 598 (2d Cir. 2005) (quoting *Eskimo Pie Corp. v. Whitelawn Dairies, Inc.*, 284 F. Supp. 987, 994 (S.D.N.Y. 1968)). "[A]mbiguity never arises out of what was not written at all, but only out of what was written so blindly and imperfectly that its meaning is doubtful." *Donohue v. Cuomo*, 38 N.Y.3d 1, 13 (2022) ("Ambiguity in a contract arises when the contract, read as a whole, fails to disclose its purpose and the parties' intent, or when specific language is susceptible of two reasonable interpretations." (quoting *Ellington v. EMI Music, Inc.*, 24 N.Y.3d 239, 244 (2014))).

The terms to which Conduit points are not ambiguous. Terms like "adequate" and "appropriate" simply require interpretation in the context of the Agreement to determine their objective meaning.[9]

---

[9] The Court finds helpful the descriptions of different kinds of ambiguity available in *Garner's Modern English Usage* 1192 (5th ed. 2022). Having examined the different kinds of ambiguity that can arise, the Court finds no ambiguity in the words to which Conduit points. Here, "the context … make[s] clear what meaning applies." *Id.* The meaning of words like "adequate" can be determined by reference to industry standards and the language of the parties' Agreement, as Xerox pointed out in its earlier briefing on the motion to compel.

(Agreement § 5.3, ECF No. 60-2.) Happily, Section 20.1 tells the Court to look not only to Xerox policies, but also to industry standards and relevant law.

Because the Agreement is unambiguous and directs the Court to relevant controlling law and industry standards, the relevant analysis is objective, not subjective, making Conduit's requests for extrinsic evidence irrelevant. *See Royal Bank of Canada v. Beneficial Fin. Leasing Corp.*, No. 87 CIV. 1056 (JMC), 1992 WL 167339, at *6 (S.D.N.Y. June 30, 1992) (citation omitted) (standard for evaluating performance is not subjective but whether the party's "dissatisfaction" is "objectively reasonable"); *see also J.D. Cousins & Sons, Inc. v. Hartford Steam Boiler Inspection & Ins. Co.*, 341 F.3d 149, 153 (2d Cir. 2003) ("Whether the standard for contract performance is objective or subjective is a matter of intent and except in the case of an ambiguity is usually determined as a matter of law."). Beyond a lack of ambiguity, however, the Court had additional reasons to reject Conduit's requests as irrelevant.

### Conduit's request for Xerox's assessments or analyses of Xerox policies was not substantially justified for additional reasons.

As a part of the Policy Requests, Conduit demanded discovery into Xerox's analysis or assessment of its own policies. The Court determined these analyses and assessments were irrelevant. (D&O at 7, ECF No. 73 ("While Conduit attempted to limit this request by using the

phrase 'so long as it is related to Xerox's claims that Conduit failed to comply with Xerox policies,' Xerox's analysis or assessment of its policies is not relevant to the issue at hand: whether Conduit breached the Agreement.").) Under the substantial justification standard, it should have been apparent that what Xerox believed, intended, or did, was irrelevant to establishing the parameters of Conduit's duty to Xerox under the plain language of the Agreement. Put another way, under the substantial justification standard, the plain language of the Agreement governed.[10] The Court finds no genuine dispute on this point, and thus, no substantial justification.

> ### The Policy Requests were likewise not substantially justified because they requested irrelevant documents concerning other Xerox business partners.

While the Court already explained why portions of the Policy Requests were irrelevant because the Agreement was not ambiguous, these same portions of the Policy Requests also fail because the Court rejected Conduit's argument that these other businesses were similarly situated to Conduit:

> Conduit has not provided any evidence that these non-party businesses supplied the same type of service to Xerox such that disclosure of any policies

---

[10] As noted, the Agreement required Conduit to "maintain levels of physical and data security protection in accordance with industry standards, current legal obligations and Xerox policies as outlined in Schedule 15 (Xerox Policies) of this Agreement." (Agreement § 20.1, ECF No. 60-2.)

> would be enlightening as to whether Conduit
> breached any specific Xerox policy. The Court finds
> that this request is commensurate with a fishing
> expedition and is therefore improper.

(D&O at 7, ECF No. 73.) Under these circumstances, the Court again

determines that these requests were not substantially justified.

### Conduit has not shown substantial justification concerning its opposition to Xerox's motion for a protective order.

This Court ruled that Conduit's request for information and doc-

uments about a ransomware attack that Xerox suffered was "not rele-

vant to whether Conduit met the terms of the Agreement." (D&O at 8,

ECF No. 73.) Conduit argues that its "opposition to Xerox's motion for a

protective order likewise was justified" based on "the same, numerous

legal authorities that supported a finding that information concerning

the ransomware attack on Xerox was potentially relevant." (Opp'n to Fee

Cross-Mot. and Reply in Supp. of Fee Mot. at 10–11, ECF No. 78.)

The Court rejects this argument as perfunctory: Conduit should

not address what it touts as a different legal standard (substantial jus-

tification) by reference to its arguments on the underlying motion to

compel. *See Ronaldi*, 2022 WL 2207185, at *12 ("Issues adverted to in a

perfunctory manner, unaccompanied by some effort at developed argu-

mentation, are deemed waived. It is not sufficient for a party to mention

a possible argument in the most skeletal way, leaving the court to put

flesh on its bones." (quoting *Great Lakes Ins. SE v. Sunset Watersports,*

*Inc.*, 570 F. Supp. 3d 1252, 1272 (S.D. Fla. 2021))); *see also Wong v. Garland*, 95 F.4th 82, 95 (2d Cir. 2024). Even if the Court considered Conduit's argument on its merits, however, the outcome would remain the same.

This case is not about why Xerox suffered any ransomware attack. This case is about whether Xerox was entitled to terminate Conduit under the terms of the parties' Agreement, that is, whether Conduit breached. As with the other requests, this one is irrelevant and unjustified because this case hinges on what Conduit did—or failed to do—to meet its contractual duties under the unambiguous terms of the Agreement. Xerox's response to a separate ransomware attack is irrelevant.

### Conduit's legal authority about substantial justification is unavailing.

Nor do the extensive legal authorities Conduit cites persuade the Court.[11] Conduit cites three principal cases[12] to argue that the Xerox

---

[11] The Court finds unhelpful lengthy string cites to cases in footnotes. Indeed, the Court is justified in ignoring such unwieldy citations and has disregarded the bulk of Conduit's footnote 3 located in ECF No. 78. (Reply in Supp. of Fee Mot. and in Opp'n to Fee Cross-Mot. at 14 n.3, Oct. 11, 2023.)

Further, Conduit's reply runs afoul of nearly every subdivision of Loc. R. Civ. P. 10(a). Failure to comply with the Local Rules may result in the Court rejecting future filings. Xerox is not innocent in this either, as its reply at ECF No. 79-12 exceeds the applicable page limit and contains a lengthy footnote.

[12] These are: *In re Sept. 11th Liability Insurance Coverage Cases*, 243 F.R.D. 114, 127 (S.D.N.Y. 2007), *In re Roblin Indus. Inc.*, 78 F.3d 30, 43 (2d Cir. 1996) (also titled *Lawson v. Ford Motor Company*), and *Granite Partners,*

Incident was "relevant" to "Xerox's interpretation of what [its cyberse-curity] policies meant or required, or provide data points for establishing industry standards including what constitute[s] 'appropriate' or 'ade-quate' security controls within the context of this business." (Mem. in Supp. of Mot. to Compel at 16 (citation omitted); *see supra* n.12.) Each case fails to support Conduit's argument because, as discussed, the re-quests were irrelevant. These cases are inapposite for yet more reasons, though.

*First*, in *September 11th Liability Insurance*, the court considered Rule 11 sanctions based on a party's false statement that "no evidence existed showing the communicated intent of the parties," to a contract, among other statements. *In re September 11th Liab. Ins.*, 243 F.R.D. at 126. After reviewing the drafters' depositions, the court determined that the party's "factual contentions" that certain entities were not covered was "objectively without rational basis" and imposed Rule 11 sanctions. *Id.* at 114, 128. The court declined to impose Rule 37 sanctions after evaluating the claim under Rule 37's "reasonable trier of fact" relevance standard. *Id.* at 125. It held that requesting "all versions or drafts" of the insurance policy, "all documents concerning the drafting, meaning, interpretation or application of key policy terms[,]" and "all documents"

---

*L.P. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, No. 96 CIV. 7874 (RWS), 2002 WL 826956, at *5 (S.D.N.Y. May 1, 2002).

concerning the policy provision at issue, *id*. at 122, were "relevant" under Rule 37. *Id*. at 129–30.

*Second*, in *In re Roblin Industries, Inc.*, 78 F.3d 30, the court analyzed whether a creditor had proven the ordinary course of business exception to avoid surrendering a preferential payment under the Bankruptcy Act, 11 U.S.C. § 547(c)(2). *Id*. at 33. To establish the disputed statutory element, the court held that "a creditor must show that the business terms" of the payment were "ordinary from the perspective of the industry," and it would evaluate the "conduct of the debtor and creditor ... objectively in light of industry practice." *Id*. at 40. Because the creditor "fail[ed] to introduce evidence of the ordinary practices of similarly situated firms," or industry practice, the court held it had failed to prove the defense. *Id*. at 44. On its face, this case seems to have little to do with the Conduit-Xerox discovery dispute.

*Finally*, in *Granite Partners*, the court analyzed a broker-brokerage client contract dispute regarding what figure would trigger a margin call. *Granite Partners*, 2002 WL 826956, at *1. The client moved *in limine* to admit evidence of one dealer's liquidation sale "to show that there was ... a robust consumer market for the types of securities [] liquidated and that [the broker's] auction was not commercially reasonable." *Id*. at *4 (alterations added). The court admitted the evidence because a factfinder could "only" determine commercial reasonableness

"by looking at how similarly situated entities acted in a similar situation," and the applicable statute had express language requiring "evidence of how other dealers acted." *Id.* at *5 (citation omitted)

These cases do not reasonably justify Conduit's requests. Only one of the three pertains to Rule 37: *In re September 11th Liability Insurance Coverage Cases*. Yet even there, the discovery request was limited to documents relevant to the drafters' intent, whereas Conduit did not limit its request on the Xerox Incident to documents the drafters used to write the Agreement. Instead, it explicitly broadened the request to encompass "All Documents" concerning "any malware or cyberattacks on [Xerox]," including "descriptions and analyses" of Xerox's own cybersecurity policies to provide "points of comparison to the ransomware attack" at issue. (D&O at 2, ECF No. 73.) Even by the holding of that case, much of the Policy Requests were overbroad. Separately, this case is unhelpful to Conduit because it presumes ambiguity in the underlying contractual terms. *See In re September 11th Liab. Ins.*, 243 F.R.D. at 127.

The financial cases Conduit cites fare no better. First, the posture of neither case is relevant. Both *In re Roblin Industries* and *Granite Partners* rely on statutory interpretation to address whether extrinsic evidence should have been admitted. *Roblin Industries* required evidence of industry practice only after reviewing the language in the Bankruptcy Act and relevant precedent. *In re Roblin Indus., Inc.*, 78

33

F.3d at 40. *Granite Partners* admitted the evidence based on the language of Article 9 of the New York Uniform Commercial Code. *Granite Partners*, 2002 WL 826956, at *5. Unlike either case, Conduit relied on no specific statutory provision. And as previously discussed, the Court does not find the Agreement ambiguous.

Even if *In re Roblin Industries* and *Granite Partners* applied, Conduit fails to show that it is similarly situated. Conduit vaguely claims it is "almost identically situated" to Bell Canada and Genesys. (Mem. in Supp. of Mot. to Compel at 10, 14–15, ECF No. 60-15). But unlike *In re Roblin Industries*, which required evidence of contracts between "similarly situated" parties, Conduit seeks contracts with one overlapping party—Xerox—and other providers. *See In re Roblin Indus., Inc.*, 78 F.3d at 42. Unlike *Granite Partners*, which admitted evidence of one broker's liquidation sale to aid in determining whether the broker's sale in the present case was commercially reasonable, Conduit did not identify a specific, comparable policy or clause. *See* 2002 WL 826956, at *4–5. Instead, Conduit vaguely argued that Bell Canada and Genesys "*presumably* had the same obligations under the allegedly breached Xerox policies." (Mem. in Supp. of Mot. to Compel at 14 (emphasis added).) That is not enough.

In sum, apart from the portion of Conduit's motion to compel that the Court granted, the Court does not find Conduit's requests for

production substantially justified. The Court likewise finds that Conduit's opposition to Xerox's motion for a protective order was not substantially justified. Conduit brought that successful motion for a protective order on itself by persisting in its overbroad and irrelevant requests. The Court will not save Conduit from the consequences of its motion to compel.

## CALCULATION OF ATTORNEYS' FEES

Through the lodestar calculation, the Court determines a presumptively reasonable fee, which is "what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Simmons v. N.Y.C. Trans. Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (internal quotation marks omitted) (quoting *Arbor Hill*, 493 F.3d at 112, 118 (2d Cir. 2007)). "[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### Xerox sufficiently documents its work.

Xerox meets its burden of showing adequate documentation. Courts consider documentation when analyzing if the party requesting fees has billed a reasonable number of hours. *See Equal Emp. Opportunity Comm'n v. Green Lantern Inn, Inc.*, No. 19-CV-06704-FPG-MJP, 2022 WL 1467820, at *5 (W.D.N.Y. May 10, 2022) ("Documentation is

generally considered when analyzing reasonable hours billed." (citing *Martinez v. City of New York*, 330 F.R.D. 60, 71–72 (E.D.N.Y. 2019))). For the Court to calculate any fee, the "requesting party" must "submit evidence supporting the number of hours worked and the hourly rate claimed." *New York v. Grand River Enterprises Six Nations, Ltd.*, No. 14-CV-910A(F), 2021 WL 4958653, at *2 (W.D.N.Y. Oct. 26, 2021) (citing *Hensley*, 461 U.S. at 433). To satisfy this requirement, attorneys should include "contemporaneously created time records that specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998).

Xerox satisfies this requirement. (Nussbaum Cross-Mot. Decl. ¶ 38 & Ex. B, ECF Nos. 75-1 & 75-3.) Xerox has included billing entries that "specify, for each attorney, the date, the hours expended, and the nature of the work done." *Kirsch*, 148 F.3d at 173. As the Court discusses below, however, some of Xerox's entries about the work expended are insufficient.

### *The Court addresses Xerox's proposed hourly rates.*

"[D]etermination of a reasonable hourly rate 'contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel,' an inquiry that may 'include judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district.'"

*Townsend v. Benjamin Enters., Inc.*, 679 F.3d 41, 59 (2d Cir. 2012) (alteration added) (quoting *Farbotko v. Clinton Cnty.*, 433 F.3d 204, 209 (2d Cir. 2005)). Such market rates "should be current rather than historic hourly rates." *Reiter v. MTA N.Y.C. Transit Auth.*, 457 F.3d 224, 232 (2d Cir. 2006) (cleaned up) (quoting *Gierlinger*, 160 F.3d at 882).

Here, Xerox requests the below rates for its attorneys, arguing that they "are commensurate with the prevailing rates in the Western District of New York and are reasonable for a case of this complexity, level of adversity, and length." (Nussbaum Cross-Mot. Decl. ¶ 35, ECF No. 75-1.)

- For Carolyn G. Nussbaum, Esq., Partner, $560 per hour. (*Id.* ¶ 30.) Ms. Nussbaum has practiced law for over 40 years. (*Id.*)

- For Eric Ferrante, Esq., Counsel, $378 per hour. (*Id.* ¶ 31.) Mr. Ferrante has practiced law for over nine years. (*Id.*)

- For Sarah Tufano, Esq., Associate, $350 per hour. (*Id.* ¶ 32.) Ms. Tufano has practiced law for over six years. (*Id.*)

- For Amy Demanchick, Paralegal, $250 per hour. (*Id.* ¶ 34.) Xerox does not provide information about Ms. Demanchick's experience level, noting only that her hourly rate was discounted by 15%. (*See id.*)

Xerox also notes that its attorneys' hourly rates represented a discount of their standard rates "ranging from 29% to 38%." (*Id.* ¶ 33.) The Court

notes that it has also reviewed the CVs of its attorneys that Xerox provided. (*Id.* Ex. C, ECF No. 75-4.)

"While the rate an attorney charges to paying clients may be evidence of a reasonable hourly rate, it is not dispositive." *Capax Discovery, Inc. v. AEP RSD Invs., LLC*, No. 1:17-CV-00500-CCR, 2023 WL 140528, at \*6 (W.D.N.Y. Jan. 10, 2023) ("[T]he actual billing arrangement is a significant, though not necessarily controlling, factor in determining what fee is 'reasonable.'" (citing *Crescent Publ'g Grp., Inc. v. Playboy Enters., Inc.*, 246 F.3d 142, 151 (2d Cir. 2001))). "In the Western District, $400–$500 per hour is generally deemed a reasonable hourly rate for experienced trial counsel." *P3 v. Hilton Cent. Sch. Dist.*, No. 6:21-CV-06546 EAW, 2023 WL 7326048, at \*6 (W.D.N.Y. Nov. 7, 2023) (quoting *Capax Discovery, Inc.*, 2023 WL 140528, at \*6).

**Ms. Nussbaum's hourly rate is reasonable.**

Even with the $400 to $500 fee range for experienced counsel, the Court still finds that Ms. Nussbaum's hourly rate is reasonable. The Western District has found an hourly rate of $500 reasonable for attorneys with "more than 20 years of experience." *Grand River Enterprises Six Nations, Ltd.*, 2021 WL 4958653, at \*4. Several years have passed since this District made that finding. And Ms. Nussbaum has *far* more than 20 years of experience. *Ronaldi*, 2022 WL 2207185, at \*9 (finding $500 rate appropriate in complex commercial matter for attorney with

17 years of experience). Finally, her acumen in complex commercial litigation matters (like this one) is well known to this Court. The Court finds her hourly rate reasonable for these reasons, and because of Xerox's success on its motion for a protective order. *See Barfield v. New York City Health & Hosp. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) ("[T]he most critical factor in a district court's determination of what constitutes reasonable attorney's fees in a given case is the degree of success obtained[.]" (internal quotation marks omitted) (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992))).

### Mr. Ferrante's and Ms. Tufano's rates are not reasonable for this District.

In past cases, this Court has found rates of $200 to $250 appropriate for newer attorneys. *See, e.g., Grand River Enterprises*, 2021 WL 4958653, at *4 (finding a $200 per hour rate reasonable in the Western District for newer attorneys); *see also Wright*, 2020 WL 289156, at *2 ($250 is reasonable for associate attorney with six or seven years of experience). Several reasons militate against using such a low rate for Mr. Ferrante or Ms. Tufano:

- The Court is aware of rising market rates in the years since those decisions.

- Mr. Ferrante and Ms. Tufano are at the higher end of associate experience level.

- This a complex commercial case.

- Xerox's motion for a protective order succeeded.

Still, Xerox's requested rates far exceed what this District has awarded in its most recent decisions. The Court finds that a rate of $300 is reasonable for Mr. Ferrante. *See McDermott v. Light the Region Media LLC*, --- F. Supp. 3d ----, No. 6:23-CV-06094 EAW, 2023 WL 8656783, at *7 (W.D.N.Y. Dec. 15, 2023) (finding $300 hourly rate for a straightforward case involving an attorney with more experience than Mr. Ferrante). The Court finds that a rate of $285 per hour is reasonable for Ms. Tufano as an associate having less experience than Mr. Ferrante. *See Bd. of Trustees of Bricklayers & Allied Craftworkers Loc. 3, New York (Rochester Chapter) Pension Fund v. Upstate Specialty Coatings LLC*, No. 23-CV-06250-FPG, 2024 WL 376652, at *8 (W.D.N.Y. Feb. 1, 2024) (awarding $285 to a junior attorney with eight years' experience).

**Ms. Demanchick's hourly rate is not reasonable.**

The Court reduces Ms. Demanchick's hourly rate to $140. *See Capax Discovery, Inc.*, 2023 WL 140528, at *7 ("The court therefore reduces the rates for paralegal assistance to $140 for a 'blended rate' reflecting a range of paralegal experience in the absence of more specific information regarding each paralegal's experience."). While a paralegal billing $250 per hour signals considerable experience, Xerox "did not identify how many years of experience" Ms. Demanchick has. *DIRECTV,*

*LLC*, 2020 WL 289156, at *2. In any event, a rate of $250 for a paralegal is significantly "higher than what is typical in the Western District." *Id*.

### *The Court finds that a slight reduction in Xerox's hours billed is warranted.*

The Court must consider the "reasonable number of hours required by the case." *Millea*, 658 F.3d at 166. "To determine the reasonableness of the hours spent on the litigation, the court must make 'a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended.'" *Godson v. Eltman, Eltman & Cooper, P.C.*, 328 F.R.D. 35, 63 (quoting *McLaughlin v. IDT Energy*, No. 14CV4107ENVRML, 2018 WL 3642627, at *18 (E.D.N.Y. July 30, 2018)). "The relevant issue, however, is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992).

The Court is persuaded that Xerox generally seeks compensation only for hours that were "reasonably necessary." *Martinez*, 330 F.R.D. at 72 (quoting *Louis Vuitton Malletier, S.A. v. LY USA, Inc.*, 676 F.3d 83, 111 (2d Cir. 2012)). In reviewing Xerox's billing, the Court is persuaded that Xerox's total hours expended are reasonable. But the Court notes that many entries lack detail about the specific portion of the

motion that Xerox's counsel was addressing. Ms. Tufano, for example, repeatedly refers generally to tasks like

- "[r]evise reply in further support of protective order," (Nussbaum Cross-Mot. Decl. Ex. B at 4, ECF No. 75-3 (this page contains other similarly vague entries)),

- "[r]evise opposition arguments," (*id.* at 2 (same)),

- "[e]dit draft of reply brief in further support of cross-motion for protective order." (*Id.* at 4.)

Several of Mr. Ferrante's entries follow the same pattern:

- "[r]eview Conduit's motion to compel and revise draft brief opposition," (*id.* at 2),

- "[r]eview and revise reply in further support of cross-motion for protective order." (*Id.* at 4.)

Here, the Court exercises its discretion "to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Schneider on behalf of A.T. v. City of Buffalo*, No. 18-CV-1431V(SR), 2021 WL 5042502, at *3 (W.D.N.Y. Oct. 29, 2021) (quoting *Kirsch*, 148 F.3d at 173). This is appropriate where, as here, "entries on a time sheet are vague or duplicative or otherwise insufficient[.]" *Martinez*, 330 F.R.D. at 72 (quoting *T.S. Haulers, Inc. v. Cardinale*, No. 09 CV 451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011)). The Court finds that a 5% across-the-board reduction is appropriate.

Xerox's billing is hardly as egregious as Conduit makes it out to be. The Court was able to determine what work Xerox's attorneys performed and when it performed that work. And while some of the entries are vague, the Court does not find that the amount of time spent on these tasks exceeds what is typical.

***The Court awards Xerox $42,527.50 in reasonable attorneys' fees.***

Based on the below breakdown, the Court awards Xerox $42,627.60 in reasonable attorneys' fees. The Court has reduced each attorney's hours by 5% and multiplied it by each attorney's awarded rate. The result is a lodestar of $42,527.50.

| Name | Adjusted total hours | Awarded rate | Lodestar by attorney |
|---|---|---|---|
| C. Nussbaum | 30 | $560 | $16,800 |
| E. Ferrante | 8 | $300 | $2,400 |
| S. Tufano | 76.3 | $285 | $21,745.50 |
| A. Demanchick | 11.3 | $140 | $1,582 |
| **TOTAL** | **125.6** | **N/A** | **$42,527.50** |

Accordingly, the Court directs the Clerk of the Court to enter judgment in the amount of $42,527.50 in favor of Xerox.

Rather than determine an offset of Xerox's fee award now based on Conduit's partial success on its motion to compel, the Court exercises its discretion under Fed. R. Civ. P. 37(a)(5)(C) to deny, with leave to

renew, Conduit's application for fees. The Court next explains its reasoning for doing so.

## CONDUIT'S MOTION FOR FEES IS DENIED WITH LEAVE TO RENEW

As noted, under Fed. R. Civ. P. 37(a)(5)(C), the Court has broad discretion to apportion expenses when it grants in part a motion to compel. Further, this Circuit's district courts generally hold that a court "must consider the three exceptions listed under Rule 37(a)(5)(A)."[13] *Wager*, 2021 WL 293076, at *3 (citation omitted); *see also Rahman v. Smith & Wollensky Rest. Grp.*, No. 06 CIV 6198 LAK, at *2 n.1 (S.D.N.Y. July 21, 2009) ("Rule 37(a)(5)(C) effectively incorporates the substantive standards of Rule 37(a)(5)(A).").

Here, the Court determines that Xerox should receive its reasonable attorneys' fees. *Wager*, 2021 WL 293076, at *3 ("[A]n award of 'expenses' under Rule 37(a)(5)(C) may include attorneys' fees." (citation omitted)). As discussed, Xerox prevailed on its motion for a protective order and, in apportioning fees under Fed. R. Civ. P. 37(a)(5)(C), the

---

[13] The parties appear to agree on this point. The Court is not as certain. Although Fed. R. Civ. P. 37(a)(5)(A) & (B) expressly incorporate some exception to an award of fees, Fed. R. Civ. P. 37(a)(5)(C) does not. Courts should not read an exception into the Federal Rules when the drafters have not created one. *See White v. Larusch*, 532 F. Supp. 3d 122, 124 (W.D.N.Y. 2021) (Courts must "give the Federal Rules of Civil Procedure their plain meaning." (quoting *Bus. Guides, Inc. v. Chromatic Commc'ns. Enterprises, Inc.*, 498 U.S. 533, 540 (1991))). Nonetheless, in its discretion, the Court has analyzed all possible exceptions.

Court finds that Xerox deserves fees for its mostly successful opposition to Conduit's motion to compel. But Conduit is not necessarily left out in the cold. The Court may award Conduit fees as an offset if depositions show that Xerox had additional documents responsive to Policy Request No. 1 yet did not produce them.

The Court granted Conduit's motion to compel only concerning Request No. 1 of the Policy Requests. At best, Conduit succeeded on a third of its motion, meaning that "whether to award fees is left to [the Court's] 'broad discretion.'" *Uddin*, 2017 WL 11674895, at *3 (S.D.N.Y. Aug. 23, 2017) (quoting *Conway Org., Inc.*, 154 F.R.D. at 78). At worst, as Xerox contends, Conduit's victory was pyrrhic: Xerox maintains that it handed over all documents responsive to Request No. 1.

But the Court is not prepared to agree with Xerox that Conduit gets nothing. The Court compelled Xerox to produce more than just "the policy documents themselves." (Opp'n to Fees Mot. and in Supp of Cross. Mot. at 8, ECF No. 75-5 (quoting Mot. to Compel at 11, ECF No. 60).) The Court directed Xerox to produce "policies, rules, requirements and procedures referenced in Section 20.1 of the [ ] Agreement." (D&O at 6, ECF No. 73.) Conduit noted at oral argument that it would probe whether Xerox had other documents responsive to the Court's order compelling production to Request No. 1 during depositions.

45

But the Court, and Conduit's counsel, agreed that a decision on fees concerning Conduit's motion to compel may not be warranted until Conduit evaluated whether Xerox had produced all documents the Court compelled it to produce in response to Request No. 1.

Rather than leave this decision in the hopper, the Court has determined that the best course is to deny Conduit's motion with leave to renew. If Conduit comes to the Court with evidence that Xerox had—yet did not produce—other documents responsive to Request No. 1, the Court will likely award fees. Conduit may file either a letter motion or a formal motion to bring this matter back to the Court's attention.

\*       \*       \*

## CONCLUSION

For these reasons, the Court GRANTS Xerox's motion for fees, awarding the reduced amount of **$42,527.50**. The Court directs the Clerk of the Court to enter judgment for Xerox in the amount of **$42,527.50** against Conduit. Conduit must pay this amount within 30 days of the date of this order. Failure to do so may result in sanctions. The Court denies Conduit's motion for fees without prejudice.

The Court is also aware that before issuing its decision on Conduit's motion to compel, and this satellite fees litigation, the parties requested an extension of deadlines. (Letter, ECF No. 72, June 30, 2023.) The Court requests that the parties propose any new deadlines that they

believe are appropriate and advise the Court of those proposed deadlines by no later than August 30, 2024. The Court finds good cause to issue an amended scheduling order and will do so once the parties propose new deadlines, should any be needed.

**SO ORDERED.**

Dated:      July 26, 2024
            Rochester, NY

                              */s/ Mark W. Pedersen*
                              HON. MARK W. PEDERSEN
                              United States Magistrate Judge